OPINION OF THE COURT
F. Warren Travers, J.
Shawmut Engineering Company, Inc., commenced this CPLR article 78 proceeding to seek judicial review of a decision of the Public Service Commission of the State of New York. The decision denied the petitioner’s request for a rescission of a condition that it commence operation of its Erie, Pennsylvania, waste-to-energy plant by December 31, 1987. The decision was issued September 3, 1986, and this proceeding was commenced on December 30, 1986, by service of the notice of petition, petition and supporting documents. Respondents have both answered the petition denying most of the allegations and opposing the relief requested. Both respondents have filed legal briefs and petitioner has filed a reply brief. The question before this court is: did the Public Service Commission act in an arbitrary and capricious manner in requiring the petitioner to commence operation by December 31, 1987?
Petitioner Shawmut is a developer of waste-to-energy facilities. Shawmut arranges for the construction of waste-to-energy facilities and sells electricity from the facilities to electric utilities pursuant to the Federal Public Utility Regulatory Policies Act of 1978 (PURPA). Respondent Commission is the regulatory body established by New York Public Service Law whose purpose among others is to determine the terms and conditions of service and rates charged by electric utilities for the purchase and sale of electricity. Respondent Niagara Mohawk is a public utility required to purchase the electricity produced by petitioner.
PURPA requires utilities to purchase electric energy from qualifying facilities. The rate paid by a utility under PURPA must be just and reasonable to the electric consumer of the electric utility, and in the public interest. In addition, PURPA does not require a utility to pay more than "avoided costs” for purchased electricity (18 CFR 292.304). The Federal Energy Regulatory Commission’s (FERC) regulations recognize that the calculation of avoided costs is technically complicated and leaves to State regulatory authorities the responsibility of implementing PURPA’s requirements (18 CFR 292.401). "Avoided costs” are defined as "the incremental costs to an *347 electric utility of electric energy or capacity or both which, but for the purchase from such qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source.” (18 CFR 292.101 [b] [6].) In other words, what it would cost the utility to generate the electricity itself or buy it elsewhere. Section 66-c of the State Public Service Law requires electric utilities to enter into long-term contracts to purchase electricity "under such terms * * * as the commission shall find just and economically reasonable to the * * * ratepayers”. Clearly, Federal law has delegated to the Commission the responsibility to review and approve contracts for the purchase of electricity by utilities. State law adopted later grants the same authority.
Prior to 1984, the Commission based its review of long-term contracts on short-run avoided costs projections on a case-by-case basis. The Commission directed utilities to develop estimates of Niagara Mohawk’s long-run avoided costs. A series of conferences and informal meetings were held, and a settlement on estimates of long-run avoided costs for the years 1985-2005 was reached. The settlement numbers were intended for guidance. The Commission, however, in its order approving the settlement numbers stated that the settlement numbers were to be employed in the negotiation of long-term contracts executed during 1985 and 1986. In April 1985, Niagara Mohawk petitioned the Commission to recalculate the long-run avoided costs estimates established by the parties’ prior settlement. The basis for the recalculation was the significant decrease in both fossil fuel prices and inflation. In August 1985, the Commission granted the petition and new rates were established. The Commission clarified that the new rates were to be used for the purchase of electricity from facilities coming on-line after December 31, 1987. Any facility coming on-line prior to December 31, 1987 would be bound by the higher settlement rates. Thus, the Commission made it clear that the higher settlement rates would be applied only to those facilities coming on-line and producing electricity prior to December 31, 1987 and not merely having entered into a contract prior to that date. Petitioner was aware of that determination and took no steps to challenge it including the determination that Niagara Mohawk not be permitted to apply the new rates to the existing contract with petitioner. On March 27, 1986, the Commission established new rates for facilities coming on-line after that date and prior to December 31, 1988.
*348 Shawmut approached Niagara Mohawk about selling electricity to it. Shawmut would produce electricity at an Erie, Pennsylvania, waste plant and wheel the power through the lines of Pennsylvania Electric Company to the Niagara Mohawk service territory. A contract was not reached and Shawmut petitioned the Commission to force Niagara Mohawk to purchase the electricity on December 17, 1984. The petition was granted on April 15, 1985, about the same time Niagara Mohawk petitioned to have the long-term avoided costs recalculated. Shawmut’s petition stated it intended to be on-line by the end of 1987. It appears contract delays have prevented Shawmut from being on-line by the end of 1987. Shawmut has spent considerable funds in designing the facility, complying with the regulatory process and in obtaining funding for the project estimated at $2.5 million. Construction cost is estimated at $70 million. Shawmut petitioned the Commission to remove the December 31, 1987 on-line operation date. Shawmut later filed with the Commission alternative contracts should the petition for rescission of the December 31, 1987 online date be denied. The alternative contracts contained different rate schedules which would be acceptable to Shawmut. The Commission approved the terms of the alternate contract. Niagara Mohawk refused to sign the contract without a clause preserving its rights to judicial review. The Commission argues that the offering of the alternative contract and having it approved renders moot the petition for rescission and constitutes a waiver of any right to challenge the December 31, 1987 on-line condition. It is estimated that the amount paid to Shawmut using the pre-December 31, 1987 settlement rates rather than the post-December 31, 1987 rates for facilities coming on-line would. result in approximately $132 million more paid to Shawmut over the term of the contract. Ultimately, this cost will be paid by Niagara Mohawk’s customers in the form of higher rates.
Public Service Law § 66-c states that among its purposes is to require the Commission to approve long-term contracts under such terms and conditions as the Commission shall find just and economically reasonable to the corporations’ ratepayers. The Commission first approved a contract with rates it believed economically reasonable at the time, provided the facility be on-line by December 31, 1987. Petitioner cannot be on-line by such date but wants the old rate applied nonetheless. Subsequent events have shown that the old avoided costs rates were higher than required. The Commission has ap *349 proved new avoided costs rates which are lower applying to facilities coming on-line after December 31, 1987. The Commission has also approved an alternative contract acceptable to petitioner if its facility comes on-line after December 31, 1987.
Permitting the old avoided costs rate to be applied would result in additional payments to Shawmut of approximately $132 million over the term of the contract. No evidence is presented that would indicate that the petitioner cannot go forward with the project using the new avoided costs rates. No evidence is presented to show if the Erie plant would operate at a profit or loss, or the extent of either using the new rates. The court assumes that the new avoided costs rates permit the Erie plant to be constructed and operated in a profitable manner or the petitioner would have raised such issues. It is not just and economically reasonable to the ratepayers to expect them to pay $132 million more by applying the old rates, while at the same time permitting the petitioner to extend its December 31, 1987 on-line deadline.
In the context of article 78 proceedings, arbitrary and capricious action is one taken without sound basis in reason and without regard to the facts (Konski Engrs. v Levitt, 69 AD2d 940 [3d Dept]). Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard (Matter of Pell v Board of Educ., 34 NY2d 222). If the decision of the Commission had a reasonable basis and was neither arbitrary nor capricious, it must be upheld (National Fuel Gas Distrib. Corp. v Public Serv. Commn., 97 AD2d 674 [3d Dept]). The determination in this case is supported by a reasonable basis and is neither arbitrary nor capricious. The relief requested by petitioner is denied and the petition is dismissed.