OPINION OF THE COURT
F. Warren Travers, J.
Niagara Mohawk Power Corporation commenced this CPLR article 78 proceeding seeking judicial review of a decision of the Public Service Commission of the State of New York. The decision denied the petitioner’s request for a rehearing. The rehearing would be to review the terms and conditions of a contract the Public Service Commission had directed Niagara Mohawk Power Corporation to enter into with Shawmut Engineering Company, Inc. The decision was issued November 6, 1986, and this proceeding was commenced by service of the notice of petition, petition verified March 6, 1987, and supporting documents. Respondents have both answered the petition denying most of the allegations and opposing the relief requested. Both respondents have filed legal briefs and petitioner has filed a reply brief. Penntech Papers, Inc., has filed an answer and legal brief opposing the petition claiming status as a respondent. No papers are before the court naming Penntech Papers, Inc., as a respondent, and no formal motion for intervention has been submitted. The court on its own motion pursuant to CPLR 7802 (d) will allow Penntech Papers, Inc., to intervene.
*237 The questions before this court are: (1) Did the Public Service Commission act in an arbitrary and capricious manner in denying the request for a rehearing, and (2) Has the Commission violated section 66-c of the Public Service Law and the State Environmental Quality Review Act?
Respondent, Shawmut, is a developer of waste-to-energy facilities, Shawmut arranges for the construction of waste-to-energy facilities and sells electricity from the facilities to electric utilities pursuant to the Federal Public Utility Regulatory Policies Act of 1978 (PURPA). Respondent, Commission, is the regulatory body established by New York Public Service Law whose purpose among others is to determine the terms and conditions of service and rates charged by electric utilities for the purchase and sale of electricity. Petitioner, Niagara Mohawk, is a public utility required to purchase the electricity produced by respondent.
PURPA requires utilities to purchase electric energy from qualifying facilities. The rate paid by a utility under PURPA must be just and reasonable to the electric consumer of the electric utility, and in the public interest. In addition, PURPA does not require a utility to pay more than "avoided costs” for purchased electricity (18 CFR 292.302). The Federal Energy Regulatory Commission’s (FERC) regulations recognize that the calculation of avoided costs is technically complicated and leaves to State regulatory authorities the responsibility of implementing PURPA’s requirements (18 CFR 292.401). "Avoided costs” are defined as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source.” (18 CFR 292.101 [b] [6].) In other words, what it would cost the utility to generate the electricity itself or buy it elsewhere. Section 66-c (1) of the State Public Service Law requires electric utilities to enter into long-term contracts to purchase electricity "under such terms as the commission shall find just and economically reasonable to the * * * ratepayers”. Clearly, Federal law has delegated to the Commission the responsibility to review and approve contracts for the purchase of electricity by utilities.
In. a prior proceeding involving complicated issues of settlement rates and long-term avoided costs, the undersigned Justice determined that the action of the Public Service Commission in denying Shawmut Engineering Company, Inc., *238 settlement rates well in excess of long-term avoided costs rates, unless the facility was on line by December 31, 1987, was not arbitrary. (See, Matter of Shawmut Eng’g Co. v Public Serv. Comma., 135 Misc 2d 345.) The parties are once again before this court except that this time Niagara Mohawk Power Corporation desires to pay rates that are less than the minimum rates set by section 66-c of the Public Service Law.
Niagara Mohawk argues: (1) That section 66-c of the Public Service Law and the minimum rate set therein of 6 cents per kilowatt hour do not apply to out-of-State facilities; (2) That the State Environmental Quality Review Act (SEQRA) does apply to out-of-State facilities; and (3) That the SEQRA process has not been complied with. Niagara Mohawk Power Corporation also objects to the terms of the contract it has been directed to enter into; more particularly, the rate structure; the front-end loading of rates; the security required for repayment of the front-end loading; the length of the contract, and the inability to adequately present its position to the Commission regarding these concerns.
Section 66-c of the Public Service Law was enacted in 1980 and amended in 1981. There is nothing in the plain language of the law which prohibits out-of-State alternate energy facilities that sell electricity to utilities within New York from being able to receive the minimum purchase rate of 6 cents per kilowatt hour. When a statute is clear on its face, there is no need to interpret it or look beyond its plain meaning (McKinney’s Cons Laws of NY, Book 1, Statutes § 94).
There is nothing in section 66-c of the Public Service Law that limits the minimum purchase price to qualifying facilities only to such facilities located within the State of New York. Nothing in the history of the law clearly implies that it is intended to apply only to facilities located within New York State. Niagara Mohawk Power Corporation claims its long-term avoided costs are lower than the minimum price 6 cents per kilowatt hour set in that statute. Petitioner asserts that the higher minimum imposed by section 66-c of the Public Service Law will result in higher over-all rates to the consumers in its service territory.
The Court of Appeals in Consolidated Edison Co. v Public Serv. Commn. (63 NY2d 424, 435) stated, "This court holds that there is no direct conflict between PURPA’s maximum purchase rate and the Public Service Law’s higher minimum purchase rate.” Clearly, the minimum rate under *239 the Public Service Law may apply even if higher than the maximum long-term avoided cost rate mandated by PURPA. Nothing in the plain language of section 66-c limits the 6-cent rate to in-State facilities. This court has not found any reported case directly in point on this issue. The Public Service Commission in other administrative rulings has determined that the 6-cent minimum applies to both in-State and out-of-State facilities. The argument of the petitioner that the 6-cent per kilowatt hour rate set by section 66-c of the Public Service Law applies only to in-State facilities is rejected.
Petitioner raises the argument that SEQRA has not been complied with. The building of the Erie, Pennsylvania, facility is not, however, direct action undertaken by the Public Service Commission nor is the Public Service Commission involved in issuing a lease, permit, license, certificate or other entitlement for use or permission to act.
Niagara Mohawk Power Corporation argues further that as a result of the authority given by statute to the Public Service Commission to : agulate authorities and contracts entered into by utilities which provide a source of funds for repayment of bonds used to build out-of-State waste-to-energy plants and, more particularly, the Commission’s order of approval, constitute "permission to act” and come within the definition of an "action” within the meaning of ECL 8-0105 (4).
There is no question that if the facility were built within New York State, a full environmental impact statement would be required. Petitioner raises a novel argument but does not cite any cases directly in point.
Under the circumstances presented here, this court determines that SEQRA does not apply to the construction of a facility outside the State of New York. Even if SEQRA were deemed to apply, this court under SEQRA could not stop construction of a facility in another State. Under PURPA, the petitioner would be required to purchase the energy produced in any event. The only involvement of the Public Service Commission is in approving the terms of the contract between Niagara Mohawk Power Corporation and Shawmut Engineering, Inc. The argument that SEQRA has not been complied with is rejected.
Petitioner alleges that the terms of the contract it has been directed to enter into are arbitrary, and a rehearing should be ordered. The terms call for a longer period than usually ordered, that is 30 years rather than 15 or 20 years; *240 the front-end loading of rates and the security for front-end overpayments. Section 66-c of the Public Service Law delegates to the Public Service Commission broad authority to approve terms of contracts entered into by utilities. Within the scope of that authority, the Commission has wide latitude. Simply because the petitioner disagrees with the terms is not sufficient to set it aside. Petitioner may not like the greater payments in the beginning of front-end loading or be fully content with the security for repayment of the front-end-loaded payments. This court will not substitute its judgment on these contract terms for that of the Public Service Commission.
In the context of article 78 proceedings, arbitrary and capricious action is one taken without sound basis in reason and without regard to the facts (Matter of Konski Engrs. v Levitt, 69 AD2d 940 [3d Dept]). Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard (Matter of Pell v Board of Educ., 34 NY2d 222). If the decision of the Commission had a reasonable basis and was neither arbitrary nor capricious, it must be upheld (Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn., 97 AD2d 674 [3d Dept]). The determination in this case is supported by a reasonable basis and is neither arbitrary nor capricious. The relief requested by petitioner is denied and the petition is dismissed.